*In re* METROPOLITAN EL. RY. CO., (*In re* JONES *et al.*)

(*Supreme Court, General Term, First Department.* January 13, 1891.)

EMINENT DOMAIN—COMPENSATION—REVIEW ON APPEAL.

 In an application to acquire title to real estate for the purposes of an elevated railroad, an award of damages to the owner will not be disturbed as excessive, where no exceptions were taken by the applicant during the course of the proceedings before the commissioners, and the record presents no grounds for the assumption that they have taken into consideration improper items of damage.

Appeal from special term.

The special proceeding was commenced on September 20, 1889, by service on Tobias Oberfelder, the respondent, of the petition and notice of application for the appointment of commissioners. The petitioner, the Metropolitan Elevated Railway Company, is a domestic corporation, organized and existing under and by virtue of the acts of the legislature of this state, being chapter 885, Laws 1872; chapter 837, Laws 1873; chapter 275, Laws 1874; chapter 606, Laws 1875; and the acts amendatory thereof and supplemental thereto. The respondent, Tobias Oberfelder, purchased the premises in question, No. 140 First avenue, in this city, in 1854, and ever since then has owned and occupied the same. These premises are 80 feet deep, and have a frontage of 18 feet 10 inches on First avenue. Upon this lot is erected a building of brick, 4 stories in height, and 80 feet deep, 46 feet 6 inches in height, 18 feet 10 inches in width on First avenue, and is used as a store and dwelling. First avenue is one of the public streets of this city, and was opened under and by virtue of chapter 86, Laws 1813, and the acts amendatory thereof and supplemental thereto. The elevated railway structure was constructed and the operation of the railway was begun by the petitioner, and since the year 1879 the railway has been maintained and operated by the petitioner and the Manhattan Railway Company, respectively, as lessor and lessee. The structure of the railway, and the manner of operating the same, is familiar to every resident of the city, and is particularly described in the report of the commissioners. In September, 1889, the Metropolitan Elevated Railway Company began these proceedings to acquire so much of the property, easements, and other interests in First avenue, appurtenant to or part of or constituting the street in front of the said premises, as has been taken by reason of the construction and maintenance of the elevated railway of the petitioner, as the same is now con-

structed and maintained, etc., and has been and may be required by reason of the operation of said railway with cars or trains of cars, etc. The respondent consented to the granting of the prayer of the petitioner, and to the appointment of commissioners therefor. The order was entered appointing Messrs. Andrew H. Green, Dwight H. Olmstead, and Edward G. Donnelly, commissioners "to ascertain and appraise the compensation to be made to the persons hereinafter specified as owners of premises, respectively interested in the privileges, easements, or interests taken by the petitioner herein for the purpose of its incorporation, as described in the petition herein, to-wit, the constructing, maintaining, and operating its railway, including its roadway, tracks," etc., "for its use as an elevated railway, and so long as the said streets or avenues, or any of them, shall be used or maintained as public streets, highways, or thoroughfares, which said privileges, easements, or interests are situate in the city and county of New York. The said property and real estate is further described as follows: So much of the property, easements, or other interests in the streets and avenues, respectively, hereinafter named, and intersecting streets appurtenant to or part of or constituting the streets in front of or along-side of the lots and premises hereinafter described, respectively, as has been taken by reason of the construction and maintenance of the elevated railway of the petitioner, as the same is now constructed and maintained," etc., "and as is required by reason of the operation of said railway with cars," etc. These commissioners met, and the proceedings were conducted by them in strict compliance with the provisions of the law governing these special proceedings. Their report was duly made and filed on July 1, 1890, (pages 17–24.) The important part of the report of the commissioners is as follows: "Ninth. That the compensation to be made for so much of the privileges, easements, and rights appurtenant to the said lot of land known as 'Number 140 First Avenue,' in the city of New York, as has been taken by and for the purpose of the petitioner, in the manner that the same has been taken by the petitioner by the construction, maintenance, and operation of the said railroad through First avenue, in front of the said lot, as hereinbefore described, and in accordance with the plan hereto annexed, is the sum of seventeen hundred dollars, ($1,700,)" etc. The order of the special term confirming this report was duly made and entered on July 9, 1890. From this order of confirmation the petitioner appealed to the general term of this court on July 21, 1890, (page 35.)

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

Davies & Rappallo, for appellant. E. B. & C. P. Cowles, for respondent.

BRADY, J. No exceptions were taken by the appellants, and the proceedings present only the questions, if any, which spring from them, namely, whether the respondent, Oberfelder, was entitled to an award, and, if yea, whether the compensation given was so excessive as to be palpably wrong. The recorded testimony was in conflict to some extent on the subject involved, but, as the record does not necessarily give all the influencing circumstances, the whole case is not, it may be said, before us. It is familiar law that in proceedings like these the commissioners are not like other tribunals to be governed exclusively by evidence, or confined to the strictness observed in common-law actions in the receipt of evidence, and can view the locus in quo. Aside from this, it does not appear upon the record that the commissioners erred in the principles upon which they made their appraisal; a circumstance striking and impressive relating to that conclusion being the absence of exceptions. Both parties had an equal range of proofs, and the respondent was the successful party, and it cannot be said either that he was not entitled to damages, or that the amount given was excessive. The facts showing a depreciation in the enjoyment of the premises, and a diminution of their value, were stated and reported by the commissioners to exist, arising

from the construction and use of the appellant's road and appliances. The proof showed that, while the property in the immediate vicinity had, since the respondent's purchase of his premises, increased 25 per cent., the respondent's had only increased 10 per cent., in consequence of the appellant's structure and the running of its locomotives. The commissioners gave less than these figures warranted, however, and this decreases the cause of complaint by the appellants. It is not at all difficult in these cases to build up theories upon which an appeal seems to be plausible, or to advance others which may be the subject of examination in other cases, or to assume that the commissioners have considered improper items of damage, but only questions which rest upon some tangible basis can be properly considered. In this brief review, all is said that is deemed appropriate, except that there has been nothing discovered which calls for a reversal. The order appealed from should therefore be affirmed, with costs. All concur.